UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 12-171 |
| KURT E. MIX | SECTION "K"(1) |

## ORDER AND REASONS

Before the Court is Defendant's Motion for a Protective Order (Doc. 26) filed by Kurt Mix ("Mix) who was a drilling engineer for BP plc ("BP") at the time of the *Deepwater Horizon* blowout on April 20, 2010. Mix worked on a number of efforts by BP to stop the resultant oil flow from the Macondo well. As part of his work, he allegedly generated and had access to BP internal data regarding the amount of oil flowing from the well. (Doc. 7, Indictment, ¶¶2 and 3).

On May 2, 2012, Mix was charged by the United States in a two count indictment with obstruction of justice in violation of 18 U.S.C. § 1512(c)(1). These charges are based on his allegedly deleting certain iPhone texts to BP's then-Drilling Engineering Manager for the Gulf of Mexico ("SUPERVISOR") and an outside contractor ("CONTRACTOR") with whom Mix was working on the spill response to the *Deepwater Horizon* blowout and resultant three month oil spill. The gravamen of the instant motion rests on Mix's contention that he possesses exculpatory information over which a third-party holds an attorney-client privilege.[1] Mix maintains that the nature of this information "is compelling and unambiguous, and it conclusively demonstrates that defendant Mix did not commit the crimes charge in the

---

[1]The documents sought to be presented to the United States are those that have been filed into the record under seal as Docs. 26-6, 26-7, 26-8, and 61 and its exhibits found at 61-1 and 61-2. The Court will reference exculpatory privileged information as "EPI".

Indictment." (Doc. 26-1 at 1). Thus, Mix seeks a protective order crafted to allow him to release these privileged materials to the United States and to use them at trial.

Section 1512(c)(1) of Title 18 of the United States Code with which Mix is charged as having violated provides :

(c)Whoever **corruptly**–

(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity of availability for use in an official proceeding;

shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. §1512(c)(1) (emphasis added). The term "corruptly" must reflect some consciousness of wrongdoing. *Arthur Andersen LLP v. United States*, 544 U.S. 696, 704-06 (2005). "Corruptly" has been defined in the context of the crime of corruptly influencing a juror under 18 U.S.C. § 1503 as "knowingly and dishonestly, with the specific intent to subvert or undermine the integrity of the proceeding." Thus, the *mens rea* is an ineluctable requisite for a defendant to be found guilty of this crime, and evidence demonstrating a lack of such dishonest intent would be considered exculpatory in nature.

Mix argues that the exculpatory information at issue is of such a nature that no reasonable juror presented with this information could find that he engaged in an intentional effort to obstruct the government's investigation into the Deepwater Horizon incident . As noted, because the third-party privilege holder has not waived its claim of privilege, Mix seeks a protective order pursuant to Fed. R. Crim. P. 16(d)(1) specifically providing that:

(1)     Mix is entitled to use at trial the exculpatory privileged information or " EPI";

(2)     Mix is entitled to disclose the EPI;

2

(3) Mix's use and disclosure of the EPI does not vitiate the attorney-client privilege that the privilege-holder has over the EPI, and the privilege-holder will not be considered as having waived its attorney-client privilege for the EPI or any other privileged information.

(4) The Government shall not use the EPI outside of its litigation with Mix. In particular, the Government is precluded from using the EPI in any investigation or litigation against the privilege-holder.

(5) As necessary to further the interest of justice, this Court may modify the terms of this Protective Order at any time at the request of either party.

While BP has not weighed in on whether it considers these materials meet the applicable standard for disclosure, it maintains that the materials are indeed protected by the attorney-client privilege.

**Applicable Standard**

To make the determination at issue here, the Court must balance the right of a defendant to "a meaningful opportunity to present a complete defense" as guaranteed by the Constitution and the Sixth Amendment to the United States Constitution, *Crane v. Kentucky,* 476 U.S. 682, 690 (1986), against the attorney-client privilege which "is the oldest of the privileges for confidential communications known to the common law," *United States v. W.R. Grace*, 439 F.Supp.2d 1125, 1137 (D. Montana 2006), as recognized and codified in Fed. R. of Evid. 501. This effort underscores the "conflict between the policy favoring confidentiality of attorney-

client communications and the right of a criminal defendant to present evidence including exculpatory evidence in his defense." *Id.* at 1138.

In an meticulous and detailed opinion in which the court weighed these two important concepts Judge Malloy in *W.R. Grace* explained that cases analyzing this issue use the mechanism of a:

> "balancing test in which the evidence or testimony sought to be introduced by the defendant is weighed against the policy behind the rule requiring that the evidence be excluded. The Supreme Court has stated in summary fashion that the principle requires the evidentiary rules to yield to Sixth Amendment rights where application of the rules of evidence would **"significantly undermine [ ] fundamental elements of the defendant's defense**." *United States v. Scheffer*, 523 U.S. 303, 315, 188 S. Ct. 1261, 140 L.Ed.2d 413 (1998) . . . It follows hand in glove that in weighing the competing interests it is the exculpatory value of the lost evidence to the accused that weighs most heavily on the scale of fair trial *Id.* at 316-317, 118 S. Ct. 1261; *Davis, 415 U.S. at 319, 94 S. C.t 1105;* Rock 483 U.S. at 57, 107 S. Ct. 2704.

*W.R. Grace* 439 F.Supp. 2d at 1139-40 (emphasis added).

Exculpatory evidence has been extensively discussed in the context of the disclosure requirements as defined in *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. There a prosecutor is only required to disclose exculpatory evidence that, if suppressed, would deprive the defendant of a fair trial. *United States v. LaRouche Campaign,* 695 F. Supp. 1290 (D. Mass. 1988) citing *United States v. Bagley* 473 U.S. 667, 675 (1985). Indeed, another district court using the materiality of the evidence as its touchstone for a *Brady* determination stated:

> Materiality is not judged simply by asking whether the information might be favorable to the defendant in some degree. Put the other way around, not all information favorable to the defendant is necessarily material. *Kyles*, 514 U.S. at 437, 115 S.C.t 1555; *Bagley*, 473 U.S. at 675 & n. 7, 105 S. Ct. 3375. The touchstone of materiality is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682, 105 S. Ct. 3375.

4

> "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. *Kyles*, 514 U.S. at 434, 115 S.Ct. 1555. **The materiality of the undisclosed information is to be assess not in isolation, but in the context of the entire record at the trial.** *See United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

*United States v. Carpenter*, 405 F.Supp.2d 85 (D. Mass. 2005) (emphasis added).

Here, while obviously the decision must be made prior to trial, nonetheless, the Court is faced with a decision concerning the materiality of the evidence sought to be presented at a relatively nascent stage in these proceedings. The subject materials may indeed provide evidence that could lead a reasonable juror to find that Mix did not have the requisite dishonest intent needed to convict him on these charges. However, the lack of context and underlying facts make rendering a decision as to the admissibility of these materials at trial impossible at this time.

Furthermore, the Court has not made a determination as to whether all of the materials presented *in camera* are indeed protected by the attorney-client privilege as to BP. In the event this matter proceeds to trial, the Court will establish a protocol at the appropriate time for a determination of which of the submissions are subject to the attorney-client privilege and whether any such documents shall be admitted into evidence at trial. Accordingly,

**IT IS ORDERED** that the Defendant's Motion for a Protective Order to Allow for Immediate Disclosure and, if Necessary, Use at Trial of Exculpatory Information Not Currently in the Government's Possession (Doc. 26) is **GRANTED** in part and **DENIED** in part.

**IT IS ORDERED** that Mix is entitled to disclose the EPI **ONLY** to counsel for the United States in this proceeding.

**IT IS FURTHER ORDERED** that Mix's use and disclosure of the EPI does not vitiate the attorney-client privilege that the privilege-holder has over the EPI and the privilege-holder shall not be considered as having waived its attorney -client privilege for the EPI or any other privileged information.

**IT IS FURTHER ORDERED** that the United States shall not use the EPI outside of its litigation with Mix. In particular, the United States is precluded from using the EPI in any investigation or litigation against the privilege-holder.

**IT IS FURTHER ORDERED** that the Court shall establish a protocol with respect to a determination as to whether these materials are indeed protected by the attorney-client privilege and whether as such they are admissible based on the standards set forth herein.

New Orleans, Louisiana, this 26th day of June 2012.

**STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE**