UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                       NO. 12-171

KURT E. MIX                                  SECTION "K"(1)


# ORDER AND OPINION

Before the Court is the "Motion in Limine to Introduce Evidence of Defendant's Awareness that Law Enforcement Officials Sought to Interview Him" filed on behalf of the United States (Doc. 89). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, DENIES the motion.

## Background

The general background of this case is set forth in detail in the Order and Opinion granting in part defendant's "Motion for an Order Requiring the Government to Produce Exculpatory Material Pursuant to *Brady v. Maryland*" (Doc. 155), and therefore will not be restated herein. However, the following additional facts are relevant in connection with this motion:

- On August 8, 2011, a federal prosecutor contacted Joan McPhee, counsel for defendant Kurt Mix, via email, to schedule an interview with Mr. Mix.
- On August 10, 2011, Ms. McPhee, via email, advised the federal prosecutor that Mr. Mix was on vacation until the following week, and that upon his return she would check with Mr. Mix and get back to the prosecutor with proposed dates for the interview.
- On August 15, 2011 and August 16, 2011, Ms. McPhee called Mr. Mix and spoke with him.
- On August 17, 2011, a third party vendor hired by BP, plc ("BP") contracted Mr. Mix to schedule a time to collect electronic data from him concerning the Macondo Well

- incident. Mr. Mix advised the vendor that he would be available on August 22, 2011.
- On or about August 19, 2011, Mr. Mix deleted a text message string from his phone that contained numerous texts between himself and a BP contractor.
- On August 22, 2012, the BP vendor collected Mr. Mix's phone and created a forensic image of the device.
- On August 23, 2011 Joan McPhee met with Mr. Mix.
- On July 11, 2012, counsel for the United States sent Ms. McPhee a letter seeking a stipulation that "as of August 15, 2011, the defendant was aware that federal law enforcement wished to interview him in connection with its criminal investigation into the Deepwater Horizon incident."
- On August 22, 2012, the defendant declined to enter into that stipulation.

The United States then filed this motion seeking to introduce:

> (1) testimony from Joan McPhee, Esq. that she communicated the government's request for an interview to the defendant; (2) correspondence between Ms. McPhee and the government about the interview request; and (3) phone records reflecting at least two calls between Ms. McPhee and the defendant that were made contemporaneous with the government's request for an interview.

Doc. 89-1, p. 1. In response to the Government's motion, Mr. Mix filed a "Motion for *Ex Parte* Submission and for a Permanent Sealing Order With Respect to the Declaration of Joan McPhee in Support of Defendant's Opposition to the Government's Motion in Limine" (Doc. 107). After reviewing the motions of both the Government and the defendant, as well as Ms. McPhee's declaration filed in connection with defendant's motion, the Court issued an order on October 30, 2012, stating, in pertinent part:

> [I]n the context of attempting to balance the interests of the parties, the Court thinks that resolution of the matters presented in the motions may be aided by entry of a stipulation/declaration different than that previously offered by the Government to the defense as well as that executed by Joan McPhee and filed under seal by the defense. Therefore, the Court asked its law clerk to contact counsel for defendant to explore whether the defense would be willing to offer

2

such a stipulation/declaration.

Doc. 137, p. 1.

Thereafter, defendant filed a "Statement Regarding the Court's Order of October 30, 2012, to which he attached a "Supplemental Declaration of Joan McPhee." Doc. 139, 139-1. Ms. McPhee's Supplemental Declaration states, among other things, that:

- "This supplemental declaration is consistent with my declaration of October 9, 2012, which was manually filed under seal *ex parte* to maintain the confidentiality of information protected by the attorney-client privilege and attorney work product doctrine."
- "I am aware that Defendant Kurt Mix's cell phone records indicate that I communicated with him via telephone on August 15 and August 16, 2011. I have no recollection of informing Mr. Mix during either of those phone calls that Government counsel had advised me that they wanted to interview Mr. Mix."
- "My contemporaneous records do not indicate that I informed Mr. Mix during either the August 15 or 16, 2011 phone call of the Government's interview request. Those records do, however, reflect that, on the August 15, 2011 phone call, I made arrangements with Mr. Mix to meet with him in person for the first time in Houston in August 23-24. My contemporaneous records further document that, during our in-person meeting on August 23, 2011, Mr. Mix formally engaged me and Ropes & Gray as his counsel and I informed Mr. Mix of the Government's interview request.

Doc. 139-1. p. 1-2. Because the supplemental stipulation/declaration was not amenable to the United States, the Court must now rule on the Government's motion.

Law and Analysis

Count II of the indictment, based on Mr. Mix's alleged deletion from his iPhone of all texts in a string of text messages with an outside contractor of BP, charges Mr. Mix with obstruction of justice in violation of 18 U.S.C. §1512(c)(1). Title 18 U.S.C. §1512(c)(1) provides in pertinent part

3

that:

> Whoever corruptly –
>
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding . . . shall be fined under this title or imprisoned for not more than 20 years or both.

To establish a violation of §1512(c)(1), the Government must prove beyond a reasonable doubt "some 'nexus' between the obstruction and the official proceeding." *United States v. Bennett*, 664 F.2d 997, 1013 (5th Cir. 2011). Thus, an essential element of the "nexus" analysis is the defendant's intent.

The Government asserts that the evidence it seeks to admit is circumstantial evidence relevant to and probative of defendant's intent at the time of the deletion of the text messages which form the basis for Count II and whether defendant "believed his actions were like to affect a foreseeable grand jury proceeding." Doc. 89-1, p. 5-6. "Relevant evidence is admissible unless" the United States Constitution, a federal statute, the Federal Rules of Evidence, or "other rules prescribed by the Supreme Court" provide otherwise. Fed.R. Evid. 402. Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed.R. Evid. 401. Defendant does not contend that the evidence sought to be admitted by the government is not relevant. Rather, defendant urges that it is inadmissible under Rule 403 of the Federal Rules of Evidence which permits relevant evidence to be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice."

There being no dispute that the evidence is relevant, the Court's analysis begins with

determining whether a communication concerning the Government's desire to interview Mr. Mix is protected under the attorney-client privilege. Defendant does not urge with any degree of rigor that the evidence sought to be admitted falls within the sphere of attorney-client privilege, and indeed, the Court finds that it does not. The attorney-client privilege "shields communications from the lawyer to the client only to the extent that these are based on, or may disclose, confidential information provided by the client or contain advice or opinons of the attorney." *United States v. Neal*, 27 F.3d, 1035, 1048 (5th Cir. 1994), quoting *Wells v. Rushing*, 735 F.2d 376, 379 n.2 (5th Cir. 1985). A communication by counsel to a client restricted to the communication of the fact that prosecutors want to interview the client is not based on, nor does it disclose any confidential information provided by the client or contain any advice or opinions of the attorney. Therefore, the attorney-client privilege does not apply to the Government's request to know whether Ms. McPhee advised Mr. Mix during her telephone conversation with him on August 15 or August 16, 2011, that federal prosecutors wished to interview him.

The Court now turns to analyzing whether the evidence sought to be introduced by the United States is inadmissible under Rule 403 because the probative value of the evidence sought to be admitted is "substantially outweighed by the danger of unfair prejudice." The Court begins by examining the admissibility of the testimonial evidence the Government seeks to elicit from Ms. McPhee. Based on the "Supplemental Declaration of Joan McPhee" (Doc. 139-1), the Court finds that the evidence that Ms. McPhee could provide concerning whether she informed Mr. Mix during a telephone conversation on August 15 or 16, 2011 that federal prosecutors wanted to interview him is equivocal at best. The equivocal nature of that evidence significantly reduces its probative value. The probative evidence is further lessened because the Government has available to it another

5

source of evidence regarding whether Mr. Mix acted "corruptly" with respect to the deletion of the contractor text message string on August 19, 2011. An appropriate representative of the BP vendor tasked with collecting information from Mr. Mix's iPhone, can provide information regarding whether Mr. Mix knew that the vendor was collecting data from Mr. Mix's phone to be provided to the Government in connection with a federal investigation into the Macondo Well incident.

Having concluded that the testimonial evidence sought from Ms. McPhee has limited probative value, the Court must now determine examine whether the limited probative value of that testimonial evidence is substantially outweighed by the danger unfair prejudice resulting from the introduction of the evidence. There can be little doubt that adding "witness for the Government" to Ms. McPhee's role in this matter would potentially substantially prejudice Mr. Mix. "The proscription against an attorney serving as both an advocate and a witness in the same litigation is a long-standing ethical rule." *F.D.I.C. v. U.S. Fire Insurance Co.*, 50 F.3d 1304, 1311 (5th Cir. 1995). Although "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers," the Sixth Amendment comprehends "the right to select and be represented by one's preferred attorney." *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 1697. 100 L.Ed.2d 140 (1988). While the issue of disqualification of Ms. McPhee as Mr. Mix's counsel is not currently before the Court, the Government has acknowledged the possibility of disqualification, and it is reasonable to assume that if Ms. McPhee's testimonial evidence is admissible that the issue of Ms. McPhee's disqualification will move to the forefront of this matter. The possibility of disqualification of Ms. McPhee, less than two months before trial, and after she has represented defendant for more than one year, and the adverse impact that would have on

defendant's Sixth Amendment right to counsel creates a danger of unfair prejudice which would substantially outweigh the limited probative value of the testimony the Government seeks from Ms. McPhee.

The Court further finds that the probative value of the documentary evidence sought to be introduced by the Government is substantially outweighed by the danger of unfair prejudice. Specifically, the Government seeks to introduce an August 8, 2011, email from Derek Cohen to Ms. McPhee stating that the Government would like to interview Mr. Mix and asking for some dates for the interview, and Ms. McPhee's August 10, 2011 response email to Mr. Cohen stating that Mr. Mix was out of town until the following week and that upon his return she would check with him for available dates. Doc. 89-1, Ex. A. The Government also wants to introduce the phone records from Mr. Mix's telephone that reflect that "at least two calls between Ms. McPhee and the defendant were made contemporaneous with the government's request for an interview." Doc. 89-1, Ex. B, Doc. 89-1, p. 1. The probative value of those documents is at most minimal. The documents do not establish that Ms. McPhee told Mr. Mix that federal prosecutors wanted to interview him. Moreover, introducing those documents into evidence would inevitably result in speculation concerning the content of those two telephone conversations Mr. Mix had with his counsel, and the jury would have no context for those conversations. Jury speculation regarding why federal prosecutors wanted to interview Mr. Mix and speculation concerning the content of Ms. McPhee's conversations with her client creates a danger of unfair prejudice which substantially outweighs the minimal probative value of the evidence. This is especially true because any attempt by the defense to reduce such speculation by providing context for the documentary evidence would impair Mr. Mix's Sixth Amendment right to counsel. Because the probative value of the documentary evidence

sought to be introduced by the Government is substantially outweighed by the danger of unfair prejudice, the Court denies the Government's motion in limine. Accordingly,

**IT IS ORDERED** that the "Motion in Limine to Introduce Evidence of Defendant's Awareness that Law Enforcement Officials Sought to Interview Him" filed on behalf of the United States (Doc. 89) is DENIED.

New Orleans, this 7th day of January, 2013.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE