# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 12-171 |
| KURT E. MIX | SECTION "K"(1) |

## ORDER AND OPINION

Before the Court is the "Motion to Preclude Proposed Expert Testimony" filed on behalf of the United States of America. Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, denies the motion. However, the Court will require defendant Kurt Mix to make additional disclosures as to the testimony of Terry Payne and Dr. David Cummings, as detailed hereinafter, if defendant Kurt Mix intends to have those witnesses express expert opinions on the matters specified herein.

Background

The general background of this case is set forth in detail in the Order and Opinion granting in part defendant's "Motion for an Order Requiring the Government to Produce Exculpatory Material Pursuant to *Brady v. Maryland*" (Doc. 155), and therefore will not be restated herein. The following additional facts are relevant in analyzing the United States' motion. On May 26, 2012, Kurt Mix requested discovery from the United States, including a request for the disclosure of experts pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G). Thereafter on June 28, 2012 the United States disclosed its expert witness to defendant and requested reciprocal discovery from Kurt Mix pursuant to Rule 16(b). By letter dated August 29, 2012, Mix disclosed that it had three

expert witnesses:  Terry Payne, Dr. Larry W. Lake,[1] and Dr. David Cummings.

With respect to Terry Payne, the defendant disclosed that Mr. Payne is a Licensed Professional Engineer in Texas who works as a petroleum engineer for Platt, Sparks & Associates. Mr. Payne "assists companies and individuals with all phases of complex petroleum engineering studies, including reservoir simulation studies and recovery predictions." Doc. 213-3. Defendant also disclosed that Mr. Payne previously worked for Chevron USA and Conoco, and that while working for those entities his responsibilities included "production engineering, reservoir engineering, reserve calculations, well analysis, production optimization, and reservoir management." Id. Additionally, defendant disclosed that he anticipates that "[b]ased on [Mr. Payne's] professional experience, education, and review of documents that the Government has provided to the defense or that are in the public domain" that Mr. Payne will:

> (1) testify regarding the issue of flow rate, (2) assist the jury in understanding the meaning and import of jargon, acronyms, terms of art, and complex mathematical and engineering calculations contained in relevant documentary evidence, including documents pertaining to flow rate, Top Kill, and other well kill methods that Defendant Kurt Mix indisputably preserved for production to the Government, and (3) summarize and explain technical and engineering aspects of the Macondo Well.

Id.

Regarding Dr. David Cummings, defendant disclosed that Dr. Cummings is Executive Vice President of Kelly Technology Group, "a technology and intellectual property consulting firm," and that he has more than "thirty years of experience as a software architect, engineering manager, and consultant in several technology areas including: operating systems, computer architecture, wireless communications, hardware and software integration, data backup and recovery, disaster recovery,

---

[1] The disclosures regarding Dr. Lake are not involved in this motion.

data management, and file systems." Id. Additionally, defendant disclosed that "[b]ased on his professional and educational experience, Dr. Cummings is expected to testify regarding his independent forensic analysis of the iPhones of Kurt Mix and Jonathan Sprague and the smart phones of Bridget Mix and Deqing Kong." Doc. 213-5. The defense further stated that Dr. Cummings forensic analysis of the iPhones would involve the use of forensic tools and methodologies that are generally accepted in the industry." Id.

Thereafter on February 15, 2013, defendant filed supplemental disclosures for both Terry Payne (Doc. 213-4) and Dr. Cummings (Doc. 213-5) addressing three areas: "Education and Experience," "Bases of Anticipated Testimony," and "Anticipated Testimony." The supplemental disclosures also informed the United States that "[t]o the extent that [the proffered expert' ] testimony includes a summary, within the meaning of Federal Rule of Evidence 1006, of any materials to which the Government does not already have access, the defense will provide those materials to the Government in accordance with the agree-upon pre-trial schedule that the Court recently entered." Doc. 213-4, p. 2, Doc. 213-5, p. 2.

The United States seeks to preclude the testimony of both Mr. Payne and Dr. Cummings urging as to both, that the defendant has failed to comply with the disclosure requirements of Rule 16(b)(1)(C) and the Court imposed Scheduling Order. Additionally, the United States asserts that neither the proposed testimony of Mr. Payne nor Dr. Cummings satisfies the requirements of Federal Rule 702 of the Federal Rules of Evidence or the standards for expert testimony announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc*, 509 U.S. 579, 113 S. Ct. 2786, 125 L.Ed. 2d 469 (1993), in part because their testimony is not relevant and because Mr. Payne and Dr. Cummings are not qualified to offer the expert testimony sought to be elicited by the defendant.

Law and Analysis

1. Fed.R. Evid. 702 and *Daubert*

The United States contends that the proffered testimony of Mr. Payne and Dr. Cummings is inadmissible because it does not comply with Federal Rule of Evidence 702 and the standards announced by the Supreme Court in *Daubert*. "Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence." *Hidden Oaks Limited v. City of Austin*, 138 F. 3d 1036, 1050 (5th Cir. 1998). Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The rule reflects the Supreme Court's decisions of *Daubert* and *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167 (1999). *Daubert* charges trial courts to act as "gate-keepers" to ensure that the proffered expert testimony is both relevant and reliable. *Daubert*, 509 U.S. at 589, 592-93, 113 S. Ct. at 2795, 2796. The relevant and reliable standard announced in *Daubert* for scientific expert testimony applied to all types of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. at 147, 119 S. Ct. at 1171.

*Daubert* provides a two-prong test for determining the admissibility of expert testimony. The court "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592, 113 S. Ct. at 2796. Both prongs of the *Daubert* test must be satisfied before the proffered expert testimony may be admitted. *Id.* at 595, 113 S. Ct. at 2796.

4

This analysis "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.*

Thus, the first prong of *Daubert* focuses on whether the expert testimony is based on a reliable methodology. In determining an expert's reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595, 113 S. Ct. at 2797, 125 L.Ed.2d at 484. The second prong, i.e., whether the proposed testimony will assist the trier of fact to understand or determine a fact in issue, goes primarily to the issue of relevancy. *Daubert*, 509 at 591. Indeed, this examination is described in *Daubert* as whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *Id., citing United States v. Downing,* 753 F.2d 1224, 1242 (3rd Cir. 1985). Federal Rule of Evidence 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The United States objects to Mr. Payne's proffered testimony that "[i]f at the time of Top Kill, an expert desired to try to estimate flow rate, or to try to make a probabalistic assessment of whether flow rate was above or below 15,000 BOPD," that expert would not have relied on defendant's message to Mr. Sprague at 10:25 p.m. CDT on May 26, 2010, but rather would have relied on "the modeling work such as the type reflected in the documents that Mix preserved and produced to the BP Legal Team, as such modeling is far more illuminating of the flow rate than any of Mix's text messages." Doc. 213-4, p. 6. The government urges that this testimony addresses the materiality of the deleted text messages, and therefore is inadmissible because materiality is not an

5

element of the crime charged in the indictment. The Court agrees. The Court has previously confirmed that materiality is not an element of the offense. Therefore, Mr. Payne will not be permitted to testify concerning his opinion that an expert desiring "to try to estimate flow rate or to try to make a probabilistic assessment of whether flow rate was above or below 15,000 BOPD," would have relied on "modeling work" rather than defendant's message to Mr. Sprague at 10:25 p.m. CDT on May 26, 2010. Even though that specific testimony will not be admissible at trial, defendant will have ample opportunity to at trial to demonstrate the significance of the various materials that he preserved.

The Court defers determination of whether Mr. Payne and Dr. Cummings qualify as expert witnesses until after each has undergone *voir dire* at trial concerning his qualifications. Moreover, the Court has reviewed the qualifications of Mr. Payne and Dr. Cummings, and it appears that the qualifications of those witnesses are sufficient for them to pass *Daubert* muster. The government has not demonstrated in its papers that the qualifications of Mr. Payne and Dr. Cummings are insufficient. If the government continues to challenge the qualifications of Mr. Payne or Dr. Cummings, it may request a *Daubert* hearing prior to trial or outside the presence of the jury. Additionally, considering the various factors which must be considered in determining the admissibility of proffered expert testimony, the Court concludes that, except as to the evidentiary ruling set forth above, the analysis of the admissibility of testimony by Mr. Payne and Dr. Cummings, is premature at this time. As will be discussed herein after, additional disclosures must be made by defendant as to the opinion of Mr. Payne and Dr. Cummings and the bases and reasons for those opinions. Until defendant's disclosures are supplemented, the Court cannot definitively analyze the admissibility of the proffered testimony. Furthermore, the prematurity of the

admissibility determination is underscored by the fact that the Court does not presently have access to documents and materials either relating to the proffered testimony or which would inform the proffered expert's opinions.

   2. Federal Rule of Criminal Procedure 16

Rule 16(b)(1)(C), entitled "Expert witnesses" provides, in pertinent part, that if "the defendant requests disclosure under subdivision (a)(1)(G) and the government complies[,]" as it did in this case, then "[t]he defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence." The required written summary must "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Id. "The required written summary, however, falls far short of the 'complete statement' required of litigants in civil cases." *United States v. Nacchio*, 555 F.3d 1234, 1262 (10th Cir. 2009) (internal quotation and citation omitted). Although the written summary required under Rule 16(a)(1)(C) is not nearly as detailed and comprehensive as that required for expert testimony in a civil matter, it must nonetheless, be sufficiently specific that the purpose of the rule is not eviscerated. "The purpose of Rule 16(b)(1)(C) is to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." *United States v. Mahaffy*, 2007 WL 1213738 *2 (E.D. N.Y. April 24, 2007). Additionally, the purpose of the rule is to "inform the requesting party whether the expert will be providing only background information on a particular issue or whether the witness will actually offer an opinion." *Id.*, citing Fed.R.Crm.P. 16 Advisory Committee Notes,

7

1993 Amendment.

a) Terry Payne

The United States contends that Mr. Payne's testimony should be precluded because the disclosure made by defendant failed to specify whether Mr. Payne will be testifying as to his opinion or simply to facts. This distinction is significant because, as previously noted, disclosure under Rule 16(b)(1)(C) applies only to expert testimony, not lay testimony.

Defendant has indicated that he intends to call Mr. Payne to provide both "expert" opinion on various matters, as well as background information. In general, defendant has represented that Mr. Payne will explain and provide a "chronological overview of the Macondo Well blowout and the complex engineering that BP, other private entities, and the federal government used to attempt to kill, and finally to kill the Macondo Well. . .." Doc. 213-4, p. 2. Specifically, defendant indicated the "background information" to be provided will include information on technical engineering matters regarding the Macondo well blowput and the response effort to that blowout, including information on the complex engineering tasks performed by Kurt Mix, including flow rate modeling and other assistance with respect to relief well efforts. Doc. 213-4, p. 2-3. Additionally, defendant disclosed that Mr. Payne will provide background information to assist jurors to understand "engineering jargon, acronyms, terms of art, and complex mathematical calculations contained" in various documents related to the well blowout, and will interpret documents related to the well blowout, including documents regarding Top Kill, the rate of flow from the well, and flow rate models.

Testimony regarding the meaning of engineering jargon and acronyms qualifies as background information, and no further disclosure is required as to testimony for that purpose. Similarly,

8

defendant's disclosure that Mr. Payne will testify to a chronological overview of the Macondo Well blowout, is adequate as long as he provides no opinion concerning that blowout. However, the Court cautions defendant that, with respect to Mr. Payne's testimony concerning engineering jargon, acronyms, the chronological overview of the well blowout, and any other portions of Mr. Payne's testimony described as background information by defendant, that to the extent that the Court deems Mr. Payne's testimony to include opinion testimony, as opposed to purely factual or background information, the Court will not permit Mr. Payne to testify absent defendant having made specific disclosures concerning Mr. Payne's opinions. With respect to testimony concerning complex calculations made in connection with the well, if Mr. Payne intends to offer testimony as to the effect or result of any such calculation, then that testimony would qualify as an opinion, and defendant must disclose Mr. Payne's opinion on that subject in accordance with Rule 16(b)(1)(C). The same analysis applies to any interpretations Mr. Payne testifies to based on the facts, if such interpretations qualify as opinions which must be disclosed to the United States. In summary, even with respect to testimony concerning background information, any opinion offered by Mr. Payne which has not been previously disclosed to the United States will be stricken.

Defendant has also disclosed in its written summary that Mr. Payne will offer testimony that the rate at which oil was flowing from the Macondo Well at various times "depended upon multiple variables"; the written summary goes on to identify a number of variables and that due to various factors, " The written summary also indicates that because of a number of factors including "the depth of the Macondo Well . . . [and] other impediments to human observation and scientific measurement it was not possible to know what the flow rate was at the time of Top Kill" and that "it was not possible to know whether the actual flow rate from the Macondo Well was

greater than 15,000 BOPD." Doc. 213-4. The disclosure made to date regarding these opinions testimony is too vague to satisfy the disclosure requirements of Rule 16(b)(1)(C). More specific details concerning Mr. Payne's opinions regarding the variety of the variables affecting flow rate, why it was not possible to know the flow rate at the time of Top Kill, why models are distinct from flow rate estimates, and other opinions related to those matters must be disclosed by defendant. Additionally, the bases and reasons for all of Mr. Paynes's opinions must be set forth in a supplemental written summary. The same is true with respect to defendant's disclosures concerning Mr. Payne's opinion that as of 10:25 p.m. CDT on May 26, 2010, "one could not have known or concluded to a level of scientific certainty that Top Kill had not killed the well because the flow rate exceeded 15,000 BOPD and the orifice size was too large, or that further attempts "at the junk shot/Top Kill combination would not succeed in stopping the flow of oil. The Court realizes in a civil action such an expert report might be hundreds of pages long. That level of detail is not necessary in a written summary of expert testimony in a criminal case such as this; however, that being said, the government is entitled to more details of Mr. Payne's testimony than the general opinion testimony disclosed in "Defendant's Supplemental Disclosure for Expert Witness Terry D. Payne" provides with respect to the testimony described above as well as the other disclosures referred to in items 5-9 under "Anticipated Testimony (Doc. 213-4, p. 4-5).

Defendant also disclosed that it intends to have Mr. Payne testify as a summary witness. Rule 1006 provides that "[t]he proponent may use a summary . . . to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in the court." Defendant indicated that he would use Mr. Payne as a summary witness with respect to relevant issues within the ken of a lay juror regarding both materials in the public record and those that

Mix preserved and produced to the BP Legal Team . . .." Doc. 213-4. Defendant then identified a number of issues,, e.g. the number of Macondo-related documents that Mix preserved and produced to the BP Team and whether Mix sent or was copied on emails demonstrating governmental personnel's possession or knowledge of the flow rate modeling that Mix helped to generate. Defendant did not identify the specific documents and other materials to be summarized, but rather stated that "[w]ith respect to such potential non-expert summary testimony, the defense will provide the Government disclosures pursuant to the agreed-upon pre-trial-schedule recently entered by the Court." Doc. 213-4, p. 7.

As stated herein above, to the extent that Mr. Payne's testimony does not set forth any expert opinions it is not subject to the disclosure requirements of Rule 16. However, Mr. Payne will not be permitted to include in his summary testimony any opinion on any matter absent disclosure of that specific opinion. Therefore, if as part of Mr. Payne's summary testimony defendant intends to have Mr. Payne interpret the meaning of a document or if scientific or technical knowledge is necessary to testify as to the meaning of a document, then Mr. Payne will be able to state his opinion as to interpretation or the meaning of the document only if he has previously disclosed his opinion on that matter to the United States. Because the defendant has not yet identified the specific documents which he seeks to have Mr. Payne provide summary testimony concerning, no specific rulings can be made with respect to summary testimony to be offered by Mr. Payne.

2. Dr. David Cummings

Urging that defendant's disclosures do not satisfy the requirements of Rule 16(b)(1)(C) and that the testimony is not relevant, the United States challenges the following aspects of Dr.

Cummings testimony:

- "Discussion of the analysis conducted by Dr. Cummings on an iPhone belonging to the defendant's sister, regarding the deletion of the defendant's text message exchange with his sister";
- "Reference to certain AT&T 'test phones' that Dr. Cummings examined";
- Mention of the appearance of text messages in the Blackberry operating system interface"; and
- A description of how the iPhone buttons appears [sic] on the screen of the touch screen device."

Doc. 213-1, p. 21. Defendant asserts that his disclosures comply with the Rule 16 and urges that Rule 16(b)(1)(C) does not require him to reveal "critical defense strategy" to the United States prior to trial.

Rule 16 does not include a provision that exempts from disclosure any testimony which could be considered "critical defense strategy," nor does defendant cite any case interpreting Rule 16 to contain such a provision. Therefore, the fact that more detailed disclosure of an expert's testimony would reveal defense strategy is not an appropriate basis to not order further disclosure concerning expert testimony when the disclosure previously made does not comply with the requirements of Rule 16.

The government's sole challenge to Dr. Cummings disclosure concerning the text messages exchanged with Bridgit Mix, defendant's sister, is that defendant has not disclosed an "any actual opinion [] on these text messages that would demonstrate that such testimony is relevant." Doc. 213-1. As previously noted, the Court declines to rule upon the relevance of the proffered testimony at this time; it will do so at the appropriate time. The Court, aware that the text messages standing alone have no real significance, assumes that Dr. Cummings intends to render some conclusions concerning those text messages. If Dr. Cummings's testimony concerning these text messages is to include opinions based on technical or otherwise specialized

knowledge, the defendant must disclose those opinions to the Government.

The United States also seeks to preclude Dr. Cummings testimony regarding his use of test phones asserting that defendant has not sufficiently disclosed how he "relied upon these test phones, or whether he intends to offer testimony about the test phones." Doc. 213-1, p. 22. Counsel for defendant represented in his opposition that "the defense informed the Government that Dr. Cummings had simply used the test phones to confirm whether specific forensic artifacts are left in the iPhone's memory each time that a text message string is emptied of its contents (e.g., by touching the "Clear Conversation" icon)." Doc. 230, p. 11. Defendant's supplemental disclosures as to Dr. Cummings testimony indicate that forensic artifacts were left in defendant's iPhone when the two-party text messages between defendant's iPhone and Jonathan Sprague's iPhone were deleted (Doc. 213-5). That disclosure implicitly refers to the test phones by incorporation, and a similar implicit reference to the test phones would be reasonably inferred with respect to forensic artifacts left on an iPhone when text messages between defendant and his sister were deleted. Thus, no additional disclosure is necessary with respect to the fact that Dr. Cummings used test phones to determine that forensic artifacts are left on an iPhone each time that a message string is emptied of its content. However, if Dr. Cummings intends to offer any other opinions based on his testing and examination of test iPhones, defendant must disclose those opinions to the United States.

Additionally, the United States argues that defendant's disclosure regarding Dr. Cummings proffered testimony related to Blackberry phones fails to comply with Rule 16. Specifically, the government urges that ""[t]he disclosure does not provide any opinion that would support why Blackberry phones are relevant."

13

Defendant's supplemental disclosures contains a statement that "[a]s of March 2010, the operating system used by another popular smartphone, known as the Blackberry, did not display text messages in the same "threaded" fashion as the iPhone 3G running iOS3.1.3." Doc. 213-5, p. 8. That statement is the sole reference in defendant's supplemental disclosures to a Blackberry. That conclusion standing alone would not appear to be significant, and therefore, the Court assumes that if that conclusion is to have any significance that Dr. Cummings will render an opinion about the significance of that distinction. The United States is entitled to have that opinion regarding that significance, and any related opinions disclosed to it pursuant to Rule 16. Additionally, to the extent that Dr. Cummings's conclusion about the Blackberry depends on technical or specialized knowledge, Rule 702 applies and defendant must disclose Dr. Cummings's opinions regarding his testimony concerning Blackberry phones. With respect to the government's contention that the testimony regarding the Blackberry is not relevant, as the Court has previously indicated, issues of relevance will not be addressed at this time.

The government also challenges Dr. Cummings testimony concerning how the iPhone buttons appear on the screen of the touch screen device asserting that defendant has failed to disclose what Dr. Cummings "will actually say about the iPhone buttons" as well as any opinion to support why this proffered testimony is relevant. Defendant urges that no further disclosure is required because Dr. Cummings testimony in this area is "classic lay testimony" and is not based on his scientific, technical or specialized knowledge. The Court deems this area of testimony to be sufficiently technical to qualify as expert testimony under Rule 702. Therefore, defendant must disclose Dr. Cummings specific opinions regarding the iPhone interface in order to comply with the requirements of Rule 16. With respect to the government's contention that this

challenged testimony is not relevant, the Court declines to address the relevance issue at this time.

The United States also challenges Dr. Cummings's testimony as a summary witness under Rule 1006. The defendant has not represented with certainty that Dr. Cummings testimony will include a summary within the meaning of Rule 1006. Rather, defendant simply indicated taht "[t]o the extent Dr. Cummings testimony includes a summary, within the meaning of Federal Rule of Evidence 1006, of any materials to which the Government does not already have access, the defense will provide those materials to the Government in accordance with the agreed-upon pre-trial schedule . . .." Given the absence of any indication of what, if any, summary testimony Dr. Cummings will testify about, the Court cannot render a ruling with respect to any such testimony. The Court simply reiterates that Dr. Cummings will not be able to offer an opinion during his summary testimony if that opinion has not been disclosed as required by Rule 16.

Defendant shall provide counsel for the United States with the additional disclosures described herein not later than **May 3, 2013.**

New Orleans, Louisiana, this 12th day of April, 2013.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE