# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| VERSUS | NO. 12-171 |
| KURT E. MIX | SECTION "K"(1) |

## ORDER AND OPINION

Before the Court is the "Motion *in Limine* to Preclude References to Unrecovered Voicemails, and for an Order Compelling Disclosure of the Grand Jury Transcripts" (Doc. 258) filed on behalf of defendant Kurt E. Mix. Having reviewed the pleadings, memoranda, and relevant law, and having heard the oral argument of the parties on May 1, 2013, the Court, for the reasons assigned, grants the motion in part and denies it in part.

### Background

Because the general background of this case is well known to the parties, only the facts relevant to this motion will be set forth herein. A grand jury returned a superseding indictment against Kurt E. Mix charging him with two counts of obstruction of justice in violation of 18 U.S.C. §1512(c)(1). Count 2 of the superseding indictment relates to the deletion on or about August 20, 2010, of a string of text messages to and from an outside contractor with whom defendant was working on the response to Macondo Well spill ("Contractor") as well as voicemails from Contractor and BP's Drilling Engineering Manager for the Gulf of Mexico ("Supervisor") on or about that same date.

Between April 20, 2010 and August 20, 2011, Kurt Mix received at least 346 voicemail messages, including 41 from Supervisor and 16 from Contractor. Not later than August 22, 2011, all of those voicemail messages had been deleted. With respect to voicemails from Contractor and

Supervisor, audio could be recovered for only one voicemail from Contractor and none of the voicemails from Supervisor could be recovered. The deleted voicemails can classified into three categories: 1) those deleted August 20, 2011; 2) those deleted between April 13, 2011 and August 22, 2011; and 3) those deleted not later than August 21, 2011.

At least nine (9) voicemails left on defendant's iPhone between July 22, 2011 and August 20, 2011, were deleted on August 20, 2011. Among the voicemails deleted were one voicemail from Contractor, which was forensically recovered, one unrecovered voicemail from Supervisor, and one unrecovered voicemail from a telephone that went through BP's general switchboard.

As many as 71 voicemails were deleted between April 13, 2011 and August 22, 201. None of those voicemails were able to be forensically recovered. Contractor left two of those voicemails, one on June 17, 2011 and one on August 18, 2011.

Up to 300 voicemails were deleted not later than August 21, 2011. It is undisputed that the specific dates on which those voicemails were deleted cannot be determined. The United States' forensic expert has opined that it is possible that "some or all of these additional voicemail messages were deleted [by AT&T] when Mr. Mix failed to take action to preserve the voicemail messages by upgrading" his iPhone operating system. Doc. 257, Ex. A, p. 17. Fifty-three (53) of the fifty-seven (57) voicemail messages from Contractor and Supervisor could have been deleted by the automated action of AT&T.

Defendant moves the Court to preclude the United States from making any reference at trial to the unrecovered voicemails. Defendant contends that any reference to the unrecovered voicemails should be precluded because the jury could not reasonably infer that the unrecovered voicemails contained "incriminating information"– or even information material to the grand jury

2

investigation that Mix is charged with endeavoring to obstruct, and that therefore there is no legitimate purpose for referring to the unrecovered voicemails.

## Law and Analysis

Rule 402 of the Federal Rules of Evidence provides that "[r]elevant evidence is admissible unless" the United States Constitution, a federal statute, the Federal Rules of Evidence, or other "rules prescribed by the Supreme Court" provide that it is not admissible. "Relevant evidence" is that evidence which "has a tendency to make a fact more or less probable than it would be without the evidence" and which is a "fact of consequence in determining the action." Fed.R. Evid. 401. The district court has broad discretion to determine the relevance of evidence. *United States v. Masat*, 948 F.2d 923, 933 (5th Cir. 1991).

Unrecorded voicemails left by individuals not employed by BP or involved in the Macondo well response are not relevant to any issue in this matter. Voicemails left by individuals not employed by BP or individuals not involved in the Macondo well response would not "have a tendency to make a fact more or less probable than it would be without the evidence." Therefore, the Court grants defendant's motion to the extent that it seeks to preclude any reference to the deletion of unrecovered voicemails left by individuals who were either not employed by BP or not involved in the Macondo well response.

A more detailed analysis is necessary to determine whether the fifty- six (56) unrecovered voicemails[1] left on defendant's iPhone by either Supervisor or Contractor which were deleted between April 13, 2011 and August 22, 201, qualify as relevant evidence. The United States

---

[1]The recovered voicemail left by Contractor which was deleted between April 13, 2011 and August 22, 2011, does not fall within the scope of this motion.

contends that the unrecovered deleted voicemails are circumstantial evidence relevant to establish a nexus between the allegedly obstructive act, i.e., the deletion of the voicemails, and the foreseeability of an official proceeding, i.e., a grand jury proceeding. Additionally the United States asserts that the unrecovered voicemails are circumstantial evidence that defendant acted with corrupt intent in deleting the voicemails.

The actual date of deletion for fifty-three (53) of the fifty-six (56) unrecovered voicemails from Contractor and Supervisor is unknown and cannot be determined. All that can be determined is that the fifty-three (53) voicemails were deleted not later than August 21, 2011. It is also undisputed that it is possible that those fifty-three (53) voicemails could have been deleted as a result of the automated action of AT&T. Although there is evidence that defendant deleted voicemails from his iPhone, there is no evidence that he deleted any of the fifty-three (53) messages from Contractor and Supervisor that were deleted not later than August 21, 2011.

Those fifty-three (53) voicemails can be relevant to the issues of defendant's intent and whether he acted corruptly only if defendant, and not AT&T, deleted those voicemails. Rule 104(b) of the Federal Rules of Evidence provides that "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later." Although it is possible that a jury could infer that defendant deleted the fifty-three (53) voicemails at issue, such an inference is too speculative to support a finding that defendant did in fact delete those voicemails at issue. The Court concludes that the fifty-three (53) voicemails do not constitute relevant evidence and therefore grants defendant's motion to the extent that it seeks to preclude any reference to those unrecovered voicemails.

4

Three unrecovered voicemails from Contractor or Supervisor remain at issue. Contractor left one voicemail on defendant's phone on June 17, 2011, and another voicemail on August 18, 2011. Those two voicemails were deleted between April 13, 2011 and August 22, 2011. On August 20, 2011, Supervisor left a voicemail on defendant's phone that was deleted the same day. Those three voicemails were left by individuals who were significantly involved in the Macondo well response. Forensic evidence establishes that one of the voicemails was deleted just two days prior to defendant providing his iPhone to BP's third party vendor to be imaged, and that the other two voicemails could have been deleted on August 22, 2011 prior to the time defendant provided his phone to BP's vendor for imaging that same day. Those facts, when considered together are sufficient to give rise to a reasonable inference that would have a tendency to make a fact more or less probable than it would be without the evidence, e.g., whether a nexus exists between the deletion of the voicemails and a foreseeable grand jury proceeding or whether Mr. Mix acted with corrupt intent in deleting the voicemails. Therefore, the Court denies defendant's motion to the extent it seeks to preclude the United States from making any reference to those three voicemails.

The analysis set forth herein also applies to the final unrecovered voice mail at issue, i.e., a voicemail left on defendant's phone May 16, 2011 that came from a telephone call that went through BP's general switchboard. Considering that the call was made from a telephone routed through BP's general switchboard, it can be reasonably inferred that the call was made by a BP employee. Additionally, evidence indicates that the voicemail was deleted August 20, 2011, a mere two days before Mr. Mix produced his iPhone for imaging. That timing, coupled with the fact that the call originated from a telephone routed through BP's general switchboard persuades the Court that the voicemail at issue is relevant. Therefore, the Court denies defendant's motion to the extent that it

5

seeks to preclude the United States from making any reference to that particular voicemail.

## Grand Jury Transcripts

Defendant also requests that the Court compel the United States to disclose the transcripts of the grand jury proceedings. Defendant urges that based on the forensic evidence related to the deletion of the voicemails "it is difficult to see how a grand jury that was appropriately apprised of the evidence and correctly instructed as to the elements of obstruction of justice could have found probable cause to believe that Kurt Mix deleted any voicemails from his iPhone with the 'corrupt' intent to obstruct a federal criminal investigation into the Macondo well incident." Doc. 258, p. 11. Defendant reasons that if the prosecutors improperly instructed the grand jury that returned the superseding indictment then dismissal of the indictment would be warranted and that "if the prosecutors . . . gave a flawed set of instructions to the grand jury that returned the superseding indictment, it stands to reason that the grand jury proceedings that led to the original indictment were similarly flawed." Doc. 258, p. 12.

The Court previously ordered counsel for the United States to produce *en camera* that portion of the March 20, 2013 grand jury proceeding related to the instructions given to the grand jury concerning the elements of the offense of obstruction of justice. Counsel for the United States produced the relevant part of the March 20, 2013 grand jury transcript, as well as that part of the transcript of the grand jury proceeding from December 2012, related to the instructions given to the grand jury concerning the elements of the offense of obstruction of justice.

Prior to the return of the original indictment, the prosecutor instructed the grand jury as follows:

> For your consideration, you must find by probable cause . . . [t]he
> defendant – number one, the defendant corruptly — two– altered,

destroyed, mutilated, or concealed or attempted to do so a record, document or other object with the intent to impair the object's integrity or availability for use in an official proceeding.

So again, let me just remind you of the grand jury burden, probable cause. These would be the elements. And just to give– to prove corruptly requires that the defendant acted with some wrongful or dishonest purpose. Okay? An official proceeding, I instruct you, includes a federal grand jury. We're asking that you consider this grand jury's investigation with regard to that. And I instruct you as a matter of law that this grand jury is an official proceeding for those purposes.

I also instruct you that as a matter of law, the official proceeding need not be pending at the time that the destruction occurs. So if this grand – so some of the – one of the counts precedes the time when this grand jury was actually impaneled. I instruct you as a matter of law that the official proceeding need not be pending at the time.

Are there any questions grand jurors have about the law?

GRAND JURY: (No response.)

Transcript of May 2, 2012 Grand Jury Proceeding, p. 6-9. The transcript reveals that the prosecutor correctly stated the elements of the offense of obstruction of justice as charged in the indictment.

Prior to the return of the superseding indictment the prosecutor told the grand jury:

> You all were previously charged with regard to the elements of obstruction. And again, a new count isn't being added, just additional part of it, that's the electronic data which is contained within the iPhone, which is the subject of Count 2. But just to be clear, it adds not just the text, but the voicemail, separate crime.
>
> I am just going to read to you the elements again just so you have it in your mind and then if there is any question on the law, I'll answer that and I'll leave you all to vote.
>
> But in order to prove the charge, which is all of the additional language, it involves Title 18, United States Code, Section 1512(c)(1), the following element, which is probable cause, probable cause exists for the follow [sic] element: The defendant altered, destroyed, mutilated or concealed a record, document, or other

7

> object, or attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding. And I will tell you that a federal grand jury is an official proceeding.
>
> The government doesn't need to prove, you don't need to find that the defendant knew about the actual existence of the federal grand jury. Only that it was foreseeable to him that there was such a grand jury and that he was taking this action with consequence, likely consequence that it would affect ability of this grand jury to receive evidence.
>
> BY GRAND JUROR 21: So initially the indictment only included text messages because that was the only thing that the forensics had, that the forensics information had only collected on text, and then further analysis came back with that he also deleted voicemails?
>
> BY MR, COHEN: I think– again, what I say isn't testimony. I think you heard evidence from the agent that additional forensics work resulted in additional evidence, but you should base it on what your memory is, that wasn't collected initially. Any other questions?
>
> BY GRAND JUROR 3: There is no changes to Count 1 so we just vote on Count 2 or just vote on the whole indictment again?
>
> BY MR. COHEN: Just in an abundance of caution, I'd just ask you to vote on the whole superseding indictment because there are some background facts that you heard today that are slightly different so I'd like you to vote with regard to both counts. Good questions. I should have been clearer. Any other questions?
>
> BY THE GRAND JURORS: (No response).

Transcript of March 20, 2013 Grand Jury Proceeding, p. 4-6. The prosecutor failed to inform the grand jury that defendant had to act "corruptly" in actually or attempting to alter, destroy, mutilate, or conceal a record, document or other object with the intent to impair the object's integrity or availability for use in an official proceeding. Nor did the prosecutor mention that the defendant must

have acted dishonestly.[2]

"An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 409 (1956). Federal law does not obligate the prosecutor to provide legal instruction to the jury. *United States v. Lopez-Lopez*, 282 F.3d 1, 9 (9th Cir. 2002). "Courts . . . generally have found that the prosecutor satisfactorily explains the offense to be charged by simply reading the statute to the grand jury." *Id.* (internal quotation and citation omitted). The prosecutor is under no obligation to give the grand jury legal instructions." *Id.* (internal quotation and citation omitted). In dicta the Sixth Circuit has noted that "even if an incorrect jury instruction was given to the grand jury . . . the indictment was valid on its fact and was sufficient to require a trial of the indictment on its merits." *United States v. Battista*, 646 F.2d 237, 242 (6th Cir. 1981), citing *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *United States v. Slepicoff*, 524 F.2d 1244 (5th Cir. 1975).

However, there are circumstances under which errors in the grand jury may result in dismissal of an indictment. As a general matter "a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255, 108 S.Ct. 2369, 2373 (1988). In examining the applicable standard of prejudice in analyzing attempts to dismiss an indictment for errors before the grand jury, the Supreme Court concluded that "at least where dismissal is sought for nonconstitutional error," dismissal is appropriate "only 'if it is established that the violation substantially influenced the grand

---

[2] The Court orders that the transcripts of the grand jury proceedings on May 2, 2012 and March 20, 2013 which were provided to the Court by the counsel for the United States for *en camera* review be filed under seal as Exhibit A to this Order and Opinion.

jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id.* at 256, 108 S.Ct. at 2374, quoting *United States v. Mechanik*, 475 U.S. 66, 78, 106 S.Ct. 938, 945-946, 89 L.Ed.2d 50 (1986).

The issue then is whether the prosecutor's failure to advise the grand jury, before it returned the superseding indictment, that the defendant must have acted "corruptly" warrants dismissal of the superseding indictment. There are apparently no cases addressing the propriety of dismissing an indictment solely as the result of an error in instructing the grand jury concerning an element of the offense. However, there are several cases that are instructive on the issue of "prejudice." In *United States v. Peralta*, 763 F.Supp. 14 (S.D. N.Y. 1991), the district court concluded that the prosecutor seriously misstated to the grand jury the meaning of constructive possession by failing to "distinguish between actual and constructive possession in any coherent fashion." *Id.* at 19. The district court noted that the prosecutor

> clearly failed to instruct the grand jury that it had to find probable cause that the each of the defendants "*knowingly* [had] the power *and the intention* . . . to exercise dominion and control*" over the firearm and the drugs. Indeed, we find no mention whatsoever of the elements of knowledge and intent as they apply to constructive possession.

*Id*. The court noted that not only did the prosecutor "merely fail to instruct the grand jury on a question of applicable law[]" but that he also "provided misleading statements of the meaning of constructive possession." *Id.* at 20. However, the district court did not consider those errors alone sufficiently prejudicial to warrant dismissal of the indictment. The court concluded that "[t]he potential prejudice to the defendants caused by the misleading explanations of the law of constructive possession was compounded by the recurring problem of the government's reliance on hearsay testimonies before the grand juries." *Id.* Ultimately the court dismissed the indictment

10

concluding that "the defendants were seriously prejudiced by the cumulative effect of the government's misleading statements of law and its use of inaccurate hearsay evidence." *Id.* at 21.

United *States v. Stevens*, 771 Fed. Supp. 2d 556 (D. Maryland), while not precisely on point is also instructive. There the prosecutor sought to have a grand jury return an indictment for obstruction of justice, falsification and concealment of documents in a federal investigation, and for making a false statement in connection with a response to an inquiry by the FDA. A grand juror asked the prosecutor if it mattered that the potential defendant "was getting direction from somebody else about how to handle this? Does it matter or is it not relevant?" *Id.* at 564. The prosecutor responded by stating that "[t]here is something in the law called the advice of counsel defense." *Id*. The prosecutor then incorrectly explained that concept. The prosecutor failed to advise the grand jury that good faith reliance on the advice of counsel, when proven, negates the element of wrongful intent of a defendant that is required for conviction. The district court opined that "where a prosecutor's legal instruction to the grand jury seriously misstates the applicable law, the indictment is subject to dismissal if the misstatement casts grave doubt that the decision to indict was free from the substantial influence of the erroneous instruction." *Id.* at 567 (internal quotation and citation omitted). In *Stevens* the district court had "grave doubts as to whether the decision to indict was free from substantial influence of the improper advice of counsel instruction." *Id.* at 568. The court held that the grand juror's questions "went to the heart of the intent required to indict. The incorrect answer either substantially influenced the decision to indict or, at the very least, creates grave doubt as to that decision." *Id.* The court dismissed the indictment without prejudice to the government's right to seek another indictment "before a different grand jury that is appropriately instructed as to the law . . .." *Id.*

The prosecutor's error before the grand jury that returned the superseding indictment against Mr. Mix was less significant than those involved in *Peralta* and *Stevens.* Unlike *Peralta* which involved more than one error before the grand jury and the effect of cumulative error, here the prosecutor committed a single error before the grand jury; i.e., failing to advise the grand jury of the element that defendant act "corruptly." There are also facts in this case which mitigate the prejudice resulting from the prosecutors failure to advise the grand jury of the element of "corruptly" before it returned the superseding indictment. The grand jury had previously returned an indictment for violations of the same statute, and prior to the return of the original indictment had been properly instructed that the defendant must have acted "corruptly." The prejudice from the prosecutor's omission is further mitigated because prior to the prosecutor advising the grand jury of the elements of the offense of obstruction of justice, he gave the grand jury the proposed superseding indictment which included the "corruptly" element to the grand jury. There is also a third factor mitigating any prejudice due to the prosecutor's error. While the evidence for the superseding indictment was being presented to the grand jury, the original indictment, which properly included the "corruptly" language was displayed to the grand jury on a screen. Given those facts and circumstances, it is reasonable to conclude that the grand jury was aware of the "corruptly" element, despite the prosecutor's failure to advise the grand jurors of that element.

Moreover, no grand juror asked a question relative to the intent requirement. Thus, unlike in *Stevens,* here there is no affirmative indication that the prosecutor's omission substantially influenced the grand jury's decision to indict, and there is no grave doubt that the decision to indict was free from the substantial influence of such violations. Because the Court concludes that the prosecutor's error did not prejudice Mr. Mix, dismissal of the superseding indictment is not

warranted.

New Orleans, Louisiana, this 6th day of June, 2013.

                                              STANWOOD R. DUVAL, JR.
                                          UNITED STATES DISTRICT JUDGE